AASIR AZZARMI
10217 S. Inglewood Ave.
Inglewood, CA 90304
(323)632-8531
azafata@yahoo.com

AASIR AZZARMI, PLAINTIFF PRO SE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **AASIR AZZARMI**<br>Plaintiff, Pro Se<br><br>v,<br><br>**55 FULTON MARKET, ANGEL PARMA**<br>Defendants | **CASE No: 20-cv-06835-GBD-BCM** )<br>)<br>)<br>) **LETTER IN RESPONSE**<br>) **TO DKT#150;**<br>) **DECLARATION IN**<br>) **RESPONSE TO DKT#150**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff has "a justifiable request for delay," and good cause is shown , as plaintiff could not physically participate in a trial at this time. Morris v. Slappy, 461 U.S. 1, 103 S. Ct. 1610 (1983); Sanusi v. Gonzales, 445 F.3d 193 (2d Cir. 2006). Also, this is Plaintiff's first time requesting any delay or continuance and is made in good faith with good cause shown, as there are extraordinary circumstances.*see, e.g., Rice* v. *Ames,* 180 U.S. 371, 376 (1901) (discussing an Illinois statute that authorized justices of the peace and examining magistrates to grant continuances "on consent of the parties or on any good cause shown.");

LETTER & DECLARATION IN RESPONSE TO DKT#150

1  *Johnson* v. *Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992) ("extraordinary

2  circumstances [are] a close correlate of good cause"), with *Hall* v. *Sec'y of Health, Educ. &*

3  *Welfare,* 602 F.2d 1372, 1377 (9th Cir. 1979) ("Good cause is . . . not a difficult standard to

4  meet.")). Plaintiff has attached, Declaration & Exhibit A (heavily redacted for privacy) ,
   which gives Plaintiff at least 8 weeks based on this note. However, Plaintiff has not been

5  cleared by orthopedist and will not be cleared by orthopedist by the October 2023 date that
   the hearing is currently scheduled for.

6  **DISCLOSURE OF MEDICAL RECORDS WILL LEGALLY PREJUDICE PLAINTIFF**
   **AND THREATEN PLAINTIFF'S LIFE, HEALTH & PERSONAL SAFETY DUE TO**

7  **STALKING BY ATTORNEYS(several) & CORPORATIONS(2 specifically)**

8          Plaintiff objects to disclosing her private medical records, publicly on the docket, and/
   or to Opposing Counsel, who can not be trusted to maintain Plaintiff's privacy, as Opposing

9  Counsel has history of engaging in atrocious conduct, such as his personal conduct in which

10 he conspired to violate Plaintiff's federally protected constitutional rights(which Plaintiff
   filed a 1983 case for recently). Opposite Counsel's proclivities to resist from engaging in his

11 documented atrocious conduct(violating civil rights) would not suddenly and magically be

12 curtailed based upon "medical records," as basic federal constitutional rights supersede any
   privacy privileges. "Whoever can be trusted with very little can also be trusted with very

13 much…he who is unrighteous in a very little thing is unrighteous also in much."(Bible )

14 Also, Plaintiff's medical records have nothing to do with the claims or merits or defenses of
   this case, so Plaintiff shouldn't be required to disclose private, confidential, privileged

15 medical records to Opposing Counsel. Plaintiff has a right to medical privacy under HIPAA–

16 the federal Health Insurance Portability and Accountability Act of 1996, which establishes
   standards for the privacy and security of protected health information. California

17 Confidentiality of Medical Information Act (CMIA) defines who may release confidential

18 medical information, and under what circumstances. The CMIA also prohibits the sharing,

19 selling, or otherwise unlawful use of medical information. California Civil Code §§56 et seq.

20          Due to pending litigation, whereby Plaintiff is represented by an attorney, Plaintiff
   unable to disclose her medical records, that the Court is requesting. Also, other

21 attorneys( adversary) in that other pending litigation have been stalking and monitoring every

22 filing in the docket of this case and has made it known to Plaintiff  that they are monitoring
   everything Plaintiff does, as Plaintiff has been under constant surveillance for the last 7 years.

23 Opposing Counsel and the other unethical attorneys stalking and monitoring this case would
   certainty violate Plaintiff's rights under CMIA, HIPAA, and Plaintiff's right to privacy under

24 California Constitution, as they have a documented history of violating Plaintiff's federal

25 constitutional rights and state law rights.Plaintiff does not consent to publicly disclosing her

26 medical records.Opposing Counsel has called people that he believes knows Plaintiff or
   might know     : to inquire about Plaintiff.  Several of these people have informed Plaintiff of

27 this , as they also refused to answer Opposing Counsel intrusive , irrelevant questions and/or

28 provide Opposing counsel with any of the information he had demanded.  The disclosure of

LETTER & DECLARATION IN RESPONSE TO DKT#150

1  Plaintiff's medical records would reveal information that would put Plaintiff's life, health and
2  safety in jeopardy, as Plaintiff, reasonably, is in fear for her life and personal safety. Plaintiff
   has not yet discussed or disclosed all of the things that have been done to Plaintiff by
3  Opposing Counsel in this case and/or the other attorneys and people Opposing Counsel
4  conspired with.. Plaintiff also does not consent to disclosing her medical records to Opposing
   Counsel, as Andrew Hoffman has a documented history of violating and/or intentionally
5  conspiring to violate my constitutional civil rights, while also disclosing or receiving alleged
6  disclosures of Plaintiff's personal and private information (whether true or false) with or from
   other unethical attorneys whom Plaintiff is currently in litigation with and/or other attorneys,
7  corporations, and individuals who have no right to know of Plaintiff's personal, privileged,
8  confidential and private information and medical records.

**There will be Misuse of Plaintiff's Medical records if disclosed**

9      Medical records are peculiarly subject to misuse, especially if widely disseminated,
10 since the Courts have been ready to recognize the significant privacy interests adhering to
   medical information. Thus, Courts have commonly restricted the disclosure of such records to
11 opposing counsel and experts, preventing even opposing parties from viewing such
12 information unless there is an especially compelling reason for them to do so. See, e.g.,
   Schofstall v. Henderson, 223 F.3d 818 (8th Cir. 2000); see also Alexander v. Federal Bureau
13 of Investigation, 186 F.R.D. 54 (D.D.C. 1998); Dunn v. Warhol, 1992 WL 102744 (E.D. Pa.
14 May 8,1992). It is with these principles in mind that the Plaintiff or Patients should not be
15 required to Authorize Prohibited Disclosures.Requiring authorizations from patients would
   moreover irredeemably erode the relationship between health care providers and their patients
16 in a manner antithetical to the purposes of the Privacy Rule. In addition, shifting the burden
17 of obtaining information for law enforcement or investigatory purposes onto patients— via
   their health care providers—inappropriately positions health care providers as tools of law
18 enforcement agencies. Authorizing such advance waivers further raises constitutional
19 implications relating to warrantless searches as well as the privilege against self-incrimination
   that are equally at odds with the purposes of the Privacy Rule. Ferguson v. City of Charleston,
20 532 U.S. 67, 85 (2001).

21      **Plaintiff's California State law privileges apply**

22      This is a diversity case based on state law . National Abortion Federation v.
   Ashcroft, No. 03 Civ. 8695(RCC), 2004 WL 555701, at *6 (S.D.N.Y. March 19, 2004) ("In
23 cases arising under federal law such as this one, privileges against disclosure are governed by
24 principles of federal law.")."Although there is no physician-patient privilege in federal law,"
   Plaintiff does have a privacy interest in her medical records under California law. Manessis v.
25 New York City Dept. of Transp., No. 02 CIV. 359SASDF, 2002 WL 31115032, at *2
26 (S.D.N.Y. Sept. 24, 2002) (citing Olszewski v. Bloomberg, L.P., No. 96 Civ. 3393, 2000 WL
   1843236 at *2 (S.D.N.Y. Dec.13, 2000)), report and recommendation;Schomburg v. New
27 York City Police Dept., 298 F.R.D. 138, 141 (S.D.N.Y. 2014) )) Only [I]n cases presenting
28 federal questions" is "discoverability, privileges, and confidentiality are governed by federal

LETTER & DECLARATION IN RESPONSE TO DKT#150

law, not state law," but diversity cases, such as this,  are based on state law privileges. Crosby v. City of New York, 269 F.R.D. 267, 274 (S.D.N.Y. 2010); Feltenstein v. City of New Rochelle, No. 14-cv-5434 (NSR) (S.D.N.Y. Aug. 8, 2018)

### California Constitutional Right to Privacy

California state laws, as well as new federal regulations, provide patients rights to help keep their medical records private and confidential. As such, every California medical patient has limits on who can view and see their health records, as sharing of medical information can be a problem because information contained within medical records may be used against patient's best interest. California has stringent privacy making it difficult for other people to access your medical information. Unlike the Federal Constitution, the California Constitution specifically protects a person's medical information privacy. Article 1 of the California Constitution provides that "all people are by nature free and independent and have inalienable rights, among which is pursuing and obtaining privacy." (Davis v. Superior Court (1992) 7 Cal.App.4th 1008, 1013.) Medical records fall within the zone of privacy protected by the California Constitution. (See Id.; Britt v. Superior Court (1978) 20 Cal.3d 844; Hallendorf v. Superior Court (1978) 85 Cal.App.3d 553; Tylo v. Superior Court (1997) 55 Cal.App.4th 1397, 1387.)The mere filing of a lawsuit does not automatically strip a plaintiff of the right to privacy with respect to her medical records. Although by bringing suit there may be an implicit partial waiver of the right to privacy, "the scope of such waiver must be narrowly, rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by fear of exposure of private activities." (Davis, supra, 7 Cal.App.4th at 1014.) The California Supreme Court has made clear that such waiver extends "only to information relating to the medical conditions in question, and does not automatically open all of a plaintiff's past medical history to scrutiny." (Britt, supra, 20 Cal.3d at 849.) Furthermore, "[e]ven when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy." (Davis, supra, 7 Cal.App.4th at 1014.) "The scope of discovery must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner." (Ibid. (emphasis added).) The party seeking the constitutionally protected information has the burden of establishing that the information sought is directly relevant to the claims." (Tylo, supra, 55 Cal.App.4th at 1387.). Opposing Counsel has the burden here.

### "No Disclosure without Consent" Rule

"No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains [subject to 12 exceptions]."  5 U.S.C. § 552a(b).Under the Privacy Act's disclosure provision, agencies generally are prohibited from disclosing records by any means of communication – written, oral, electronic, or mechanical – without the written consent of the individual, subject to twelve exceptions.Federal officials handling personal information are "bound by the Privacy

1  Act not to disclose any personal information and to take certain precautions to keep personal
2  information confidential." Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n,
   715 F.3d 631, 650 (7th Cir. 2013); see also, e.g., Navy, Navy Exch., Naval Training Station,
3  Naval Hosp. v. FLRA, 975 F.2d 348, 350 (7th Cir. 1992) (noting that "Privacy Act generally
4  prohibits the federal government from disclosing personal information about an individual
   without the individual's consent").A "disclosure" can be by any means of communication –
5  written, oral, electronic, or mechanical. SeeOMB 1975 Guidelines, 40 Fed. Reg. at
6  28,953, Bartel v. FAA, 725 F.2d 1403, 1409 (D.C. Cir. 1984) (concluding that "an absolute
   policy of limiting the Act's coverage to information physically retrieved from a record would
7  make little sense in terms of its underlying purpose" and that Privacy Act "forbids
8  nonconsensual disclosure of records "by any means of communication"); see also,
   e.g., Speaker v. HHS Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1382 n.11 (11th
9  Cir. 2010) ("Numerous courts have held that the Privacy Act protects against improper oral
10 disclosures."); Jacobs v. Nat'l Drug Intelligence Ctr., 423 F.3d 512, 517-19 (5th Cir. 2005)
   (rejecting argument that "the [Privacy Act] only protects against the disclosure of a physical
11 document that is contained in a system of records," and holding that "damaging
12 information . . . taken from a protected record and inserted into a new document, which was
   then disclosed without the plaintiff's consent," violated subsection (b) because "the new
13 document is also a protected record"); Orekoya v. Mooney, 330 F.3d 1, 6 (1st Cir. 2003)
14 ("The Privacy Act prohibits more than dissemination of records themselves, but also
15 'nonconsensual disclosure of any information that has been retrieved from a protected
   record'" (quoting Bartel v. FAA, 725 F.2d at 1408)); Boyd v. United States, 932 F. Supp. 2d
16 830, 835 (S.D. Ohio 2013) ("[w]hile the term 'disclosure' is not defined by the statute, it has
17 been interpreted broadly"); Cloonan v. Holder, 768 F. Supp. 2d. 154, 163 (D.D.C. 2011)
   (citing Bartel, 725 F.2d at 1408); Chang v. Navy, 314 F. Supp. 2d 35, 41 n.2 (D.D.C. 2004)
18 (citing Bartel, 725 F.2d at 1408). and some, but not all, courts have advised that disclosures
19 can occur by either transferring a record or simply "granting access" to a record.Further, a
   disclosure under the Privacy Act "may be either the transfer of a record or the granting of
20 access to a record." OMB 1975 Guidelines, 40 Fed. Reg. at 28953 (July 9, 1975), see
21 also Wilkerson v. Shinseki, 606 F.3d 1256, 1268 (10th Cir. 2010) (interpreting disclosure
22 under the Privacy Act "liberally to include not only the physical disclosure of the records, but
   also the accessing of private records"). Plaintiff does not consent to disclosing her medical
23 records to public and/or to Opposing Counsel. Plaintiff will bring documents with her to
24 future hearing for judge's eyes only.
   Date: 8/22/23
25                          _____/s/_____
26                              Aasir Azzarmi
27
28
   _____

   LETTER & DECLARATION IN RESPONSE TO DKT#150

# DECLARATION

### I, Aasir Azzarmi, declare that:

1. Attached as Exhibit A is a true and correct copy of a doctor's note that I received on 8/13/2023. I will be and/or should be receiving, in the near future, a subsequent updated doctor's note which extends the period of time outlined in Exhibit A. I will show the judge the un-redacted version at future hearing. I will be legally prejudiced by disclosing my medical information to Opposing Counsel. Opposing Counsel has a documented history of intentionally and wantonly and maliciously violating of my rights, specially federally protected constitutional rights.

2. Opposing Counsel and others have been stalking me and harassing me and violating my constitutionally protected civil rights. I also fear for my life, personal safety and emotional/mental health due to the stalking and harassing by Opposing Counsel and/or other attorneys and/or other corporations that have been constantly harassing me, and constantly stalking me. Also, other attorneys( adversary) in that other pending litigation has been stalking and monitoring every filing in the docket of this case and has made it known to me that they are monitoring everything I do. I have been under constant surveillance for the last 7 years.

3. Under California Constitution, I have a right not to disclose my medical information, both publicly on the case docket and/or to Opposing Counsel and all the other unethical attorneys that Opposing Counsel would certainly share my medical records with.

4. Although I wish this wasn't the case, I am physically unable to travel to the hearing in October 2023 due to doctors orders and my own personal knowledge of my personal limitations of my own physical capabilities, as doctors order is strict bed rest for at least next 3-4 months. Under Doctor's orders, I am "Homebound", where I'm not supposed to leave bed besides using restroom. Doctor's staff is attempting to place me in a rehabilitation center for recovery for my physical injuries. Due to my immobility disability, it is more difficult than ever to move more than a few feet, even with a wheelchair. Doctor predicts that I most likely should be able to travel in wheelchair in about 16 weeks or so. As soon as I am able to travel in wheelchair, (hopefully before 16 weeks), I will definitely advise the Court

**I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on 8/22/23**

Aasir Azzarmi

---

## LETTER & DECLARATION IN RESPONSE TO DKT#150

Date: 8/13/2023

# Exhibit A

To whom it may concern: _

Please excuse: Aasir Azzarmi

from work/school as he/she was cared for in  on:

He/She may return to work/school on : in 6-8 weeks or once cleared by Orthopedist

_ With No restrictions

_ With the following restrictions:

 _ No Physical Education

 _ No heavy lifting above 5 pounds

 _ Sit down work only

 _ Allow extra time for assignments

 _ Other: in 6-8 weeks or once cleared by Orthopedist



8/13/23

Date





